1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ASHLEY CORRYN CHAMBERLIN,              Case No. 2:24-cv-01382-CSK

12              Plaintiff,                   ORDER ON PARTIES' CROSS MOTIONS
                                             FOR SUMMARY JUDGMENT
13         v.
                                             (ECF Nos. 11, 13)
14   COMMISSIONER OF SOCIAL
     SECURITY,
15
               Defendant.
16

17         Plaintiff Ashley Corryn Chamberlin seeks judicial review of a final decision by

18   Defendant Commissioner of Social Security denying an application for supplemental

19   security income.[1] In the summary judgment motion, Plaintiff contends the final decision

20   of the Commissioner contains legal error and is not supported by substantial evidence.

21   Plaintiff seeks a remand for further proceedings. The Commissioner opposes Plaintiff's

22   motion, filed a cross-motion for summary judgment, and seeks affirmance.

23         For the reasons below, Plaintiff's motion is GRANTED, the Commissioner's cross-

24   motion is DENIED, and the final decision of the Commissioner is VACATED and the

25   case REMANDED to the ALJ for further proceedings consistent with this order.

26   / / /

27

     ─────────────────────
28   [1]  This action was referred to the magistrate judge under Local Rule 302(c)(15) and
     proceeds on the consent of all parties. (ECF Nos. 6, 8, 9.)

                                            1

1    **I.        SOCIAL SECURITY CASES:  FRAMEWORK & FIVE-STEP ANALYSIS**

2            The Social Security Act provides benefits for qualifying individuals unable to

3    "engage in any substantial gainful activity by reason of any medically determinable

4    physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the

5    "claimant") seeks Social Security disability benefits, the process for administratively

6    reviewing the request can consist of several stages, including: (1) an initial determination

7    by the Social Security Administration; (2) reconsideration; (3) a hearing before an

8    Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the

9    Social Security Appeals Council. 20 C.F.R. § 416.1400(a).

10           At the hearing stage, the ALJ is to hear testimony from the claimant and other

11   witnesses, accept into evidence relevant documents, and issue a written decision based

12   on a preponderance of the evidence in the record. 20 C.F.R. § 416.1429. In evaluating a

13   claimant's eligibility, the ALJ is to apply the following five-step analysis:

14           **Step One**: Is the claimant engaged in substantial gainful activity? If yes,
             the claimant is not disabled. If no, proceed to step two.

15           **Step Two**: Does the claimant have a "severe" impairment? If no, the
16           claimant is not disabled. If yes, proceed to step three.

             **Step Three**: Does the claimant's combination of impairments meet or
17           equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")?
             If yes, the claimant is disabled. If no, proceed to step four.
18
             **Step Four**: Is the claimant capable of performing past relevant work? If
19           yes, the claimant is not disabled. If no, proceed to step five.

20           **Step Five**: Does the claimant have the residual functional capacity to
             perform any other work? If yes, the claimant is not disabled. If no, the
21           claimant is disabled.

22   *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. § 416.920(a)(4). The

23   burden of proof rests with the claimant through step four, and with the Commissioner at

24   step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant

25   not disabled, and the Social Security Appeals Council declines review, the ALJ's

26   decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d

27   1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-

28   final agency action). At that point, the claimant may seek judicial review of the

1    Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

2         The district court may enter a judgment affirming, modifying, or reversing the final

3    decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial

4    review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has

5    repeatedly admonished that the court cannot manufacture arguments for the plaintiff.

6    *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep.*

7    *Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court

8    should "review only issues which are argued specifically and distinctly," and noting a

9    party who fails to raise and explain a claim of error waives it).

10        A district court may reverse the Commissioner's denial of benefits only if the ALJ's

11   decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d.

12   at 1154. Substantial evidence is "more than a mere scintilla" but "less than a

13   preponderance," i.e., "such relevant evidence as a reasonable mind might accept as

14   adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in

15   the record that both supports and detracts from the ALJ's conclusion, but may not affirm

16   on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th

17   Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in

18   testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision

19   must be upheld where the evidence is susceptible to more than one rational

20   interpretation, or where any error is harmless. *Id.*

21   **II.    FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS**

22        On October 13, 2017, Plaintiff applied for supplemental security income under

23   Title XVI of the Social Security Act, alleging she has been disabled since April 2, 2011.

24   Administrative Transcript ("AT") 361 (available at ECF No. 10). Plaintiff claimed disability

25   due to ulcerative colitis, chronic fatigue syndrome, post-traumatic stress disorder

26   ("PTSD"), major depression, and autoimmune hepatitis Type 2. AT 399. Plaintiff's

27   applications were denied initially and upon reconsideration; she sought review before an

28   ALJ. AT 163, 181, 203. Plaintiff appeared with a representative at a January 13, 2020

1    hearing before an ALJ, where Plaintiff testified about her impairments. AT 121-45.

2    Plaintiff appeared at a second hearing on August 3, 2022 with a representative, where

3    she testified about her impairments, Plaintiff's grandmother testified, and a vocational

4    expert testified about hypothetical available jobs in the national economy. AT 76-120.

5    Plaintiff appeared with a representative at a third hearing on March 9, 2023, where

6    Plaintiff testified about her impairments, and Plaintiff's grandmother and friend also

7    testified. AT 38-75.

8         On July 20, 2023, the ALJ issued a decision finding Plaintiff was not disabled. AT

9    14-27. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity

10   since September 30, 2017. AT 19. At step two, the ALJ determined Plaintiff had the

11   following severe impairments:  ulcerative colitis, chronic fatigue syndrome, autoimmune

12   hepatitis, hypothyroidism, cognitive changes, posttraumatic stress disorder, anxiety, and

13   depression. *Id.* At step three, the ALJ found Plaintiff's combination of impairments did not

14   meet or medically equal any Listing. AT 20. (citing 20 C.F.R Part 404, Subpart P,

15   Appendix 1). Relevant here, the ALJ considered Listing 5.05 (chronic liver disease), 5.06

16   (inflammatory bowel disease), 5.05, and 14.07 (immune deficiency disorders, excluding

17   HIV infection) for Plaintiff's physical impairments, and Listings 12.04 (depression), 12.06

18   (anxiety), 12.15 (trauma- and sensor-related disorders) for Plaintiff's mental impairments,

19   examining the "Paragraph B" and "Paragraph C" criteria for the mental impairments.[2]

20   The ALJ found Plaintiff mildly limited in understanding, remembering, or applying

21   information; she also found Plaintiff moderately limited interacting with others, in

22

23   [2] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders
     limit their functioning:  understanding, remembering, or applying information; interacting
24   with others; concentrating, persisting, or maintaining pace; and adapting or managing
     oneself. To be found disabled under the Paragraph B categories, the mental disorder
25   must result in an "extreme" limitation of one, or "marked" limitation of two, of the four
     areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental
26   Disorders, sub. A.2.b. "Paragraph C" of listings including 12.04 and 12.06, provides
     criteria used to evaluate "serious and persistent mental disorders." To be "serious and
27   persistent" there must be a medically documented history of the existence of the mental
     disorder over a period of at least 2 years. *Id.*, sub. A.2.c.
28

1  concentrating, persisting or maintaining pace, and in adapting or managing oneself. AT

2  21.

3      The ALJ then found Plaintiff had the residual functional capacity to perform light

4  work (20 C.F.R. § 416.967(b)), except that Plaintiff:

5      [C]an occasionally climb ramps and stairs and occasionally
       climb ladders and scaffolds; can have no more than frequent
6      exposure to hazards such as unprotected heights and
       operating heavy machinery; cannot operate a motor vehicle;
7      requires ready access to a bathroom facility; and is limited to
       simple tasks with occasional superficial public contact and
8      few changes in a routine work setting.

9  AT 22. In crafting this residual functional capacity, the ALJ stated she considered all

10 symptoms and the extent to which these symptoms can reasonably be accepted as

11 consistent with the objective medical evidence and other evidence. AT 22. The ALJ

12 considered the medical opinions and prior administrative medical findings. *Id.*

13     Based on the residual functional capacity, the ALJ determined at step four that

14 Plaintiff was unable to perform any past relevant work. AT 27. However, at step five, the

15 ALJ found Plaintiff capable of performing other jobs in the national economy, including:

16 (i) marker, light, SVP 2, 131,000 jobs nationally; (ii) office helper, light, SVP 2, with

17 10,000 jobs nationally; and (iii) router, light, SVP 2, with 31,000 jobs nationally.[3] AT 28.

18 Thus, the ALJ found Plaintiff not disabled during the relevant period. *Id.*

19     On March 29, 2024, the Appeals Council rejected Plaintiff's appeal. AT 1-3.

20 Plaintiff filed this action requesting judicial review of the Commissioner's final decision,

21 and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 11, 13.)

22 **III.    ISSUES PRESENTED FOR REVIEW**

23     Plaintiff contends the ALJ erred by failing to properly consider the medical source

24

25 [3] "Light" in the ALJ's step-five determination references light work, as defined by
26 20 C.F.R. §§ 404.1567(b) and 416.967(b).
       "SVP" is "specific vocational preparation," defined as "the amount of lapsed time
27 required by a typical worker to learn the techniques, acquire the information, and
   develop the facility needed for average performance in a specific job-worker situation."
28 *See* DOT, App. C, § II, available at 1991 WL 688702.

1   opinions of Jazmine Toailoa, Psy.D., psychological consultative examiner, and Kim

2   Morris, Psy.D. and B. Rudnick, M.D., State agency psychological consultants, when

3   determining the residual functional capacity. Plaintiff also contends that the ALJ failed to

4   properly evaluate the medical source opinions of Heather Hall, M.D., Plaintiff's

5   psychiatrist, and treating medical providers Michael F. McClanahan, P.A.-C.,[4] Nick

6   Young, N.D., Joshua Pruitt, P.A. Plaintiff seeks a remand for further proceedings. (ECF

7   Nos. 11, 14.)

8        The Commissioner argues that substantial evidence supported the ALJ's

9   assessment of the medical opinions, prior administrative medical findings, and step five

10  findings by properly analyzing the medical opinions. (*See* ECF No. 13.) Thus, the

11  Commissioner contends the decision as a whole is supported by substantial evidence

12  and should be affirmed. (*Id.*)

13  **IV.    DISCUSSION**

14       The Court focuses its analysis on Plaintiff's argument that the ALJ failed to

15  properly evaluate the opinions of Dr. Toailoa, Dr. Morris, and Dr. Rudnick, whose

16  opinions the ALJ found to be persuasive, when considering the residual functional

17  capacity. Because the Court finds that remand is warranted on this ground, the Court

18  declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208,

19  1212 (9th Cir. 2012); *Millsap v. Kijakazi*, 2023 WL 4534341, at *7 (E.D. Cal. July 13,

20  2023).

21       **A.    Medical Opinion Evidence**

22       For applications filed on or after March 27, 2017, an ALJ need "not defer or give

23  any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

24  prior administrative medical findings, including those from [a plaintiff's] medical sources."

25

26  ───────────
    [4] The opinion cited by the ALJ is addressed to Katherine Bisharat, M.D. but signed by
    Mr. McClanahan. *See* AT 1227. The ALJ characterized this opinion as Dr. Bisharat's
27  opinion. AT 26. Both Plaintiff and Defendant refer to this opinion as the opinion of Mr.
    McClanahan. Pl. MSJ at 18 n.1; Def. MSJ at 11 n.6. For consistency, the Court also
28  refers to this opinion as the opinion of Mr. McClanahan.

1   20 C.F.R. §§ 404.1520c(a) and 416.920c(a). Instead, the ALJ is to evaluate medical

2   opinions and prior administrative medical findings by considering their "persuasiveness."

3   *Id.*

4           In determining how "persuasive" the opinions of medical sources and prior

5   administrative medical findings are, an ALJ must consider the following factors:

6   "supportability, consistency, treatment relationship, specialization, and 'other factors.'"

7   20 C.F.R. §§ 404.1520c and 416.920c at sub. (b) and (c)(1)-(5). Despite a requirement

8   to "consider" all factors, the ALJ only need articulate a rationale on how the supportability

9   and consistency factors were considered, as they are "the most important factors." *Id.* at

10  sub. (b)(2). A medical opinion is supported if the medical source explains the relevant

11  objective medical evidence. *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022). A

12  medical opinion's consistency concerns its alignment with other medical and nonmedical

13  sources in the record. *Id.* at 792. The regulations grant the ALJ flexibility to weigh the

14  supportability and consistency factors based on all evidence in the record. 20 C.F.R.

15  §§ 404.1520c(c)(1)-(2) and 416.920c(c)(1)-(2). The ALJ is not required to articulate

16  findings on the remaining factors (relationship with plaintiff, specialization, and "other")

17  unless "two or more medical opinions or prior administrative medical findings about the

18  same issue" are "not exactly the same," and both are "equally well-supported [and]

19  consistent with the record." *Id.* at sub. (b)(2)-(3). An ALJ may address multiple opinions

20  from a single medical source in one analysis. 20 C.F.R. §§ 404.920c(b)(1) and

21  416.920c(b)(1) ("source-level articulation"). Generally speaking, the ALJ does not need

22  to discuss every piece of evidence when interpreting the evidence and developing the

23  record. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

24          **B.      Residual Functional Capacity Formation**

25                   1.      Legal Standards

26          A claimant's residual functional capacity assessment is a determination of what

27  the claimant can still do despite his or her physical, mental and other limitations.

28  20 C.F.R. § 404.1545(a). The residual functional capacity is the "maximum degree to

1    which the individual retains the capacity for sustained performance of the physical-

2    mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In

3    determining a claimant's residual functional capacity, an ALJ must assess all the

4    evidence (including the descriptions of limitation, and medical reports) to determine what

5    capacity the claimant has for work despite the impairment(s). 20 C.F.R. § 404.1545(a);

6    *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (a residual

7    functional capacity that "fails to take into account a claimant's limitations is defective").

8    Therefore, an ALJ errs when she provides an incomplete residual functional capacity

9    ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th

10    Cir. 2012).

11          The residual functional capacity does not need to directly correspond to a specific

12    medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical

13    findings into a succinct [residual functional capacity]." *Rounds v. Comm'r of Soc. Sec.*

14    *Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). ALJs are capable of independently

15    reviewing and forming conclusions about medical evidence to determine whether a

16    claimant is disabled and cannot work, as required by statute. *Farlow v. Kijakazi*, 53 F.4th

17    485, 488 (9th Cir. 2022). The ALJ's residual functional capacity assessment should be

18    affirmed if the ALJ has applied the proper legal standard and the decision is supported

19    by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.

20    2005).

21                    2.      Analysis

22                         a.      *Jazmine Toailoa, Psy.D*

23          Plaintiff argues that the residual functional capacity did not take into account

24    numerous limitations assessed by Dr. Toailoa even though the ALJ found Dr. Toailoa's

25    opinion persuasive. Pl. MSJ at 6, 8-9 (ECF No. 11). The ALJ addressed the medical

26    opinion of Dr. Toailoa. AT 25-26. Dr. Toailoa found that Plaintiff was mildly limited in her

27    ability to understand, remember, and perform complex written and oral instructions. AT

28    879. She found Plaintiff moderately limited in her ability to maintain regular attendance in

1   the workplace due to mental health symptoms, and likely to have periodic attendance

2   difficulties maintaining a 40-hour workweek but is likely to show adequate attendance in

3   an 8-hour workday. *Id.* Dr. Toailoa found Plaintiff moderately limited in her ability to

4   interact with coworkers and with the public due to her mental health symptoms. AT 880.

5   Dr. Toailoa further found that Plaintiff was moderately limited in her ability to maintain a

6   normal workday or workweek without interruptions resulting from the claimant's

7   psychiatric condition. *Id.* Dr. Toailoa also found Plaintiff moderately limited in her ability

8   to deal with the usual stresses encountered in a competitive work environment. *Id.*

9          The ALJ found this opinion persuasive. AT 25-26. The ALJ found the opinion

10   supported by exam findings of intact intelligence, adequate attention and concentration,

11   adequate fund of knowledge and memory, and intact insight and judgment, but anxious

12   mood and affect. *Id.* The ALJ also found the opinion consistent with the evaluation of

13   Christina Bourne, M.D. who found Plaintiff was able to engage in activities of daily living

14   and required social functions without any serious issue. AT 26; *see* AT 1239-40.

15          Plaintiff argues that the residual functional capacity did not take into account Dr.

16   Toailoa's opinion that Plaintiff had moderate limitations in her ability to maintain regular

17   attendance in the workplace, and moderate limitations in her ability to complete a normal

18   workday or workweek without interruptions resulting from her psychiatric condition. *Id.* at

19   8-9. Plaintiff also argues that the ALJ did not take into account Dr. Toailoa's opinion

20   about Plaintiff's limitations in her ability to interact with her coworkers when the residual

21   functional capacity only limits Plaintiff's interactions with the public. *Id.* at 9. Lastly,

22   Plaintiff argues that the residual functional capacity did not contain limitations addressing

23   Dr. Toailoa's opinion that Plaintiff had moderate limitations in her ability to deal with

24   usual stresses found in a competitive work environment. *Id.*

25          Defendant asserts that the residual functional capacity takes these limitations into

26   account by limiting Plaintiff to simple tasks. Def. MSJ at 5 (ECF No. 13). Defendant also

27   argues that State agency consultants Dr. Morris and Dr. Rudnick found Plaintiff

28   moderately limited in her ability to maintain a regular schedule and complete a normal

workday and workweek without interruptions, but found that even with these moderate

limitations, Plaintiff had the ability to "maintain adequate attention, concentration,

persistence and pace as needed to complete a full workday/work week." Def. MSJ at 5.

Because the ALJ found Dr. Toailoa's opinion persuasive, the ALJ was required to

account for the moderate limitations in the residual functional capacity or provide an

explanation why she did not accept them. *See Macquarrie v. Comm'r of Soc. Sec.*, 2023

WL 8242069, at *5 (E.D. Cal. Nov. 28, 2023). The Court finds the ALJ erred in failing to

set forth the moderate limitations identified by Dr. Toailoa in the residual functional

capacity. Here, the residual functional capacity limits Plaintiff "to simple tasks with

occasional superficial public contact and few changes in a routine work setting." AT 22.

This limitation fails to account for Plaintiff's moderate limitations in maintaining regular

attendance, completing a normal workday or workweek without interruptions from

psychiatric condition, interacting with coworkers and the public, and dealing with the

usual stresses encountered in a competitive work. *See* AT 25. Recent cases in this

district take the approach that a restriction to a simple or routine task does not account

for all moderate limitations. *See Macquarrie*, 2023 WL 8242069, at *6; *see also Slover v.

Kijakazi*, 2023 WL 5488416, at *4 (E.D. Cal. Aug. 24, 2023); *Harrell v. Kijakazi*, 2021 WL

4429416, at *6 (E.D. Cal. Sept. 27, 2021) (collecting cases); *Ramirez v. Kijakazi*, 2023

WL 4409853, at *5 (E.D. Cal. Jul. 7, 2023). Following this approach, the Court concludes

that given that the ALJ found Dr. Toailoa's opinion persuasive, the ALJ's decision to limit

Plaintiff to work consisting of simple tasks did not adequately address or account for Dr.

Toailoa's moderate limitations.

>                    b.      *Kim Morris, Psy.D. and B. Rudnick, M.D.*

The ALJ analyzed the medical opinions of the State agency consultants generally

but does not list them by name. AT 26. Plaintiff specifically addresses the opinions of

Kim Morris, Psy.D. and B. Rudnick, M.D. in her brief. Pl. MSJ at 11. Dr. Morris found

Plaintiff to be alert, fully oriented, with a normal memory, appropriate mood and affect.

AT 154. She found that Plaintiff is capable of simple and detailed tasks that involved

1   limited public contact and social demands. AT 154. Dr. Morris and Dr. Rudnick found

2   Plaintiff to be moderately limited in her ability to perform activities within a schedule,

3   maintain regular attendance, and be punctual; and moderately limited in her ability to

4   complete a normal workday and workweek without interruptions from psychologically

5   based symptoms and to perform at a consistent pace without an unreasonable number

6   and length of rest periods. AT 159, 176, 177. Both doctors also found Plaintiff

7   moderately limited in her ability to maintain socially appropriate behavior and to adhere

8   to basic standards of neatness and cleanliness, and get along with coworkers or peers.

9   AT 159-60, 177. Both doctors found Plaintiff had a sufficient ability to complete simple

10  and detailed instructions, and maintain adequate attention, concentration, persistence

11  and pace to complete a full work day/work week. AT 160, 178.

12          The ALJ found the findings by the State agency consultants persuasive. AT 26.

13  The ALJ considered that the State agency consultants' findings that Plaintiff was capable

14  of simple and detailed instructions and simple decision, and capable of maintaining

15  appropriate behavior in setting of limited social demands and public contact, supported

16  by explanations. AT 26. Further, the ALJ found the opinions consistent with Plaintiff's

17  good response to ulcerative colitis treatment and the assessment of Dr. Toailoa. *Id.*

18          Plaintiff argues that the ALJ failed to adopt the opinions that Plaintiff needed

19  limited social demands and had moderate limitations in her ability to get along with

20  coworkers and peers, even though the ALJ found the medical opinions persuasive. Pl.

21  MSJ at 12. Defendants acknowledge that the residual functional capacity did not include

22  Drs. Morris and Rudnick's finding that Plaintiff was restricted to limited social demands.

23  Def. MSJ at 8. However, Defendant argues that this error was harmless because the

24  jobs of marker and router do not involve any social demands. *Id.* at 8-9.

25          The ALJ found Plaintiff was capable of performing a significant number of other

26  jobs in the national economy including marker, office helper, and router. AT 28. Although

27  the unskilled jobs at issue here and their corresponding Dictionary of Occupational Titles

28  descriptions suggest they may not necessarily require significant social interaction (*see*

1    Def. MSJ at 9), the hypotheticals to the vocational expert needed to reflect the correct

2    social interaction limitations for the vocational expert's testimony to serve as substantial

3    evidence supporting the ALJ's step five finding. *See Alexander v. Saul*, 817 F. App'x

4    401, 404 (9th Cir. 2020).

5         Here, the vocational expert was not provided a hypothetical that was consistent

6    with the restrictions included in Drs. Morris and Rudnick's opinions. *See* AT 115-19.

7    Thus, the error was not harmless as it is not clear from the record whether the inclusion

8    of the social interaction limitation opined by Drs. Morris and Rudnick would have

9    eliminated the available jobs. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

10   2008)

11        Moderate limitations are not per se disabling, but they may translate into more

12   concrete work restrictions. *See Macquarrie*, 2023 WL 8242069, at *7. Considered in

13   connection with Plaintiff's other restrictions, these moderate limitations could render

14   Plaintiff disabled. *See Corrales v. Kijakazi*, 2022 WL 2292065, at *6 (E.D. Cal. Jun. 24,

15   2022). Because the ALJ did not adequately address Drs. Morris and Rudnick's moderate

16   limitations in the residual functional capacity, and the vocational expert was not provided

17   a hypothetical consistent with these the restrictions, these limitations could impact the

18   ultimate disability determination. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050,

19   1055 (9th Cir. 2006). The ALJ also did not adequately address Dr. Toailoa's moderate

20   limitations in the residual functional capacity, and these limitations could further impact

21   the ultimate disability determination. *See id.*

22        **C.    Remand**

23        The decision whether to remand for further proceedings or order an immediate

24   award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172,

25   1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further

26   administrative proceedings would serve no useful purpose," remand for further

27   proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). As it is

28   not clear that further administrative proceedings would serve no useful purpose, remand

1    for further proceedings is appropriate here. *See id.*; *see also Dominguez v. Colvin*, 808

2    F.3d 403, 407 (9th Cir. 2015).

3        On remand, the ALJ shall reassess Plaintiff's residual functional capacity, taking

4    into account the moderate limitations in the opinions of Dr. Toailoa and the State agency

5    physicians, Drs. Morris and Rudnick, which the ALJ found to be persuasive. The ALJ

6    shall then proceed through steps four and five to determine what work, if any, Plaintiff

7    can perform.

8        Having found that remand is warranted, the Court declines to address Plaintiff's

9    remaining arguments. *See Hiler*, 687 F.3d at 1212; *Millsap*, 2023 WL 4534341 at *7.

10   **V.    CONCLUSION**

11        Based on the foregoing, the Court finds that the ALJ's decision is not supported

12   by substantial evidence.

13                                 **<u>ORDER</u>**

14        Accordingly, the Court ORDERS:

15      1.     Plaintiff's motion for summary judgment (ECF No. 11) is GRANTED;

16      2.     The Commissioner's cross-motion (ECF No. 13) is DENIED;

17      3.     The final decision of the Commissioner is VACATED;

18      4.     The case is REMANDED to the ALJ for further proceedings consistent with

19            this Order; and

20      5.     The Clerk of the Court is directed to CLOSE this case.

21

22   Dated:  May 28, 2025

23                                              CHI SOO KIM

24                                       UNITED STATES MAGISTRATE JUDGE

25   5, cham.1382.24

26

27

28